# Ryman's Estate.

*Decedents' estates—Executors and administrators—Trustees—Deposit of security for payment of decedent's debts—Recovery of security.*

An attorney died possessed of certain trust property of which a client, who had predeceased him, was trustee. The executors of the attorney deposited with a bank certain bonds in pursuance of an agreement reciting the desire of the executor to make restitution and setting forth that such bonds were "to be held for said (substituted) trustee as security for the forthcoming of the principal fund upon settlement of the estate."......Thereafter the amount due from the attorney's estate to the trust estate was ascertained by the court and paid in full. Subsequently the executor petitioned the Orphans' Court for a return of the bonds; but it was contended by persons interested in the trust estate that the bonds had become part thereof by such deposit and that the bank held such bonds as trustee ex maleficio. *Held,* the court properly awarded the bonds to the executors of the attorney.

Argued May 23, 1916. Appeal, No. 145, Jan. T., 1916, by Jacob S. Pettebone, Guardian of Milton B. Streator, a minor, from decree of O. C. Luzerne Co., No. 353 of 1899, requiring the Miners Bank of Wilkes-Barre to turn over to the Executors of W. P. Ryman certain bonds, In re Estate of W. P. Ryman, deceased. Before BROWN, C. J., MESTREZAT, POTTER, STEWART, MOSCH-ZISKER, FRAZER and WALLING, JJ. Affirmed.

Petition to require a bank to turn over to the Executors of W. P. Ryman certain bonds.

From the record it appeared that W. P. Ryman was attorney for equitable life tenants under the will of Charles Streator and for S. B. Sturdevant, the trustee.

FREAS, P. J., filed the following opinion:

The petition of Leslie S. Ryman, one of the executors of W. P. Ryman, recites that his decedent died July 31, 1899; and that by reason of certain transactions between his decedent and S. B. Sturdevant, trustee, under the will of Charles Streator, deceased, he entered into an agreement with said trustee which is appended in full:

"Whereas, by the last will of Charles Streator probated and of record in Luzerne County in Will Book C, page 551, a certain trust was created wherein S. B. Sturdevant was appointed trustee as will appear of record in the Orphans' Court of said county at No. 556 of 1895; and

"Whereas, subsequently the entire trust fund amounting to approximately eleven thousand five hundred dollars ($11,500), came into the possession of William P. Ryman, purchaser of the interests of Charles Streator and of Charlotte Butler, except the $175.00 noted in the addendum; and

"Whereas, by reason of the death of said Ryman, it is now deemed desirable to restore the principal fund to the proper custody of the trustee for the purposes of the trust, which restoration, however, cannot be conveniently effected pending settlement of Ryman's estate.

"Now, therefore, it is agreed that pending such settlement, the executors of the said Ryman will deposit with the Anthracite Savings Bank of Wilkes-Barre, for the benefit of the trustee, a certain bond, bearing date January 1st, 1890, given by T. F. Ryman, Leslie Ryman, John J. Ryman and Ruth E. Ryman to the said W. P. Ryman in the sum of twenty thousand dollars ($20,000) real debt upon which fifteen thousand dollars ($15,000) remains unpaid, to be held for said trustee as security for the forthcoming of the principal fund upon the settlement of the said estate, or sooner if directed by the court, this agreement being made without prejudice, either to the right of any person in interest to demand the restoration of the said fund, or to the right of said W. P. Ryman's estate to assert in answer thereto, that the trust fund became properly vested in point of law in him, the said Ryman by his purchases aforesaid or in any other manner, leaving the questions to be determined by the court.

"Witness our hands and seals this 26th day of December, 1900.

"In presence of:

"LESLIE S. RYMAN, Exr. [SEAL]
"S. B. STURDEVANT.        [SEAL]"

"The words 'except the $175.00 noted in the addendum,' written in before signing.

"H. A. FULLER.
"S. J. STRAUSS."


"ADDENDUM.


"Dec. 26, 1900, I certify that as part of the trust fund I hold savings deposit book No. 68, Wyoming National Bank, on which $175.00 is deposited the interest of which during the life of the trust is to be paid to the estate of W. P. Ryman.                S. B. STURDEVANT.

" 'Rec'd Dec. 26, 1900, of Leslie S. Ryman, executor,

bond mentioned in agreement, dated Jany. 1, 1890. Real debt $20,000 payable 5000. Jany. 1, 1891 & 5000. annually Jany. 1st, annual interest 6 per cent., default clause 3 months. Receipts endorsed Feby. 3, 99, showing full payment of interest to Jany. 1, 99 & 5000. on principal leaving balance of $15,000 secured with int. from 1st Jany. 1899 at 5 per cent.

'Anthracite Savings Bank,
'By H. A. FULLER, Atty.'

"April 19, 1905, Ryman bond for $15,000, having been paid, $12,000 bonds of Wilkes-Barre, Dallas and Harvey's Lake Railway Company are substituted for same.

"Anthracite Savings Bank,
"By C. W. LAYCOCK, Cashier.
"LESLIE S. RYMAN."

Pursuant to this agreement the executor deposited with the bank the bond therein recited, which was later withdrawn and by consent of the parties to the agreement $12,000 Wilkes-Barre, Dallas & Harvey's Lake Railway Company bonds were substituted. The Anthracite Savings Bank was later merged with the Miners Bank, the present depository.

The petitioning executor prays that the depository bank be directed to turn over to the Ryman estate the said bonds.

The answer of the bank admits the facts set forth in the petition, but asks that certain action be taken by the court respecting the coupons attached to said bonds, and that certain heirs of Charles Streator be made parties.

The answer of H. G. Shupp, administrator of S. B. Sturdevant, the deceased trustee, is mainly to the effect that when the bond was deposited Sturdevant ceased to be trustee, except as to $175, and that by reason of the acceptance of the bond and the payment of some of the coupons thereon to Ryman's executors the said bank became trustee ex maleficio of the assets of the Streator estate. It also sets forth that certain of the Streator heirs have not been served with notice of this petition,

and that the rights of the trustee's surety cannot be affected by these or other proceedings already had. Also, that the court in settling the account of the trustee in the Streator estate found the trustee to be indebted to the extent of $15,605.60 as of June 19, 1911, and that of this sum there remains unpaid $4,844.50, for which indebtedness the deposited bonds are liable. And also that all matters concerning the said agreement are cognizable only in the Streator estate and not in the Ryman estate.

The answer of Jacob S. Pettebone, guardian of Milton B. Streator, is to the same effect, and adds that the judgment entered against the Ryman executors who intervened in the settlement of the trustee's final account was in legal effect a decree of restitution of two items of the trust estate, to wit, $300 and $10,000, found in said proceedings to have been misappropriated in his lifetime by said Ryman, and that said proceedings in no way affect the right of the Streator heirs to resort to the securities set aside by the agreement of December 25, 1900, to satisfy the unpaid balance of the amount found due the Streator estate from the trustee.

All the parties to the agreement have been served with notice of this proceeding.

Considering the terms of this agreement we would say that these bonds must be surrendered to the Ryman executors as prayed for. It recites the desire to restore the trust fund to the trustee, "which restoration, however, cannot be conveniently effected pending settlement of Ryman's estate. Now, therefore, it is agreed that pending such settlement "the Ryman executors will deposit with the bank, for the benefit of the trustee, a certain bond, to be held for said trustees as security for the forthcoming of the principal fund upon the settlement of the said estate, or sooner if directed by the court." The agreement was made without prejudice to the rights of any party, "leaving the questions to be determined by the court."

The time has now arrived, after sixteen years, when the purpose of the agreement can be carried out. The audit of the executors' final account is now pending, and all claimants against the Ryman estate must come in and prove their claims or be forever debarred from the fund, of which these very bonds form a part, and which the heirs have asked to have distributed to them in kind. Unless these bonds are restored it is impossible to effect the settlement of the Ryman estate, pending which, under the agreement, the bonds were deposited. The estate is solvent and there is no doubt whatever that it can pay many times over all claims brought against it. If any one has a claim against the estate, now is the time to present it.

The main objection of the trustee's administrator and the guardian of the Streator heirs respondents to the allowance of this petition, as set forth in their answers, is that the deposit of the securities under the agreement was designed to be and in legal effect was a restitution by the Ryman estate of the misappropriated assets of the Streator estate, and that the bank by accepting the deposit became thereby a trustee ex maleficio of the trust estate.

That these bonds were deposited by the executor as collateral security, to secure the payment of a contested claim pending the settlement of the Ryman estate, the agreement itself demonstrates. The deposited bonds never belonged to the Streator estate and even the indebtedness to secure which they were pledged was indefinite in amount and was disputed in its entirety.

There can be no doubt that the executor had a perfect right to pledge these bonds to secure the final payment of any indebtedness which his decedent contracted in his lifetime: Schell v. Deperven, 198 Pa. 600; 18 Cyc. 371. If the executor acted within his legal authority, in pledging the bonds, it is difficult to see why the bank could not accept them as stakeholder, or how the bank could become trustee ex maleficio without committing miscon-

duct or an illegal act.    Both under the agreement and under the law as applied to the facts, the bank was a mere depository without any active duties whatever and no misconduct on its part has been shown.    Any claim the bank may have for compensation may be made at the Ryman audit.

The executor also maintains that all the questions raised by the agreement are res adjudicata.    This leads us into the Streator Estate (241 Pa. 142).

S. B. Sturdevant was appointed trustee in the estate of Charles Streator, deceased, in 1885, and died in 1909. His administrator was cited to file an account for the deceased trustee, which he did in 1911.    To this account exceptions were filed by certain Streator heirs and were to the effect that the trustee had received certain assets not accounted for, and that all the assets of the trust estate had been misappropriated by W. P. Ryman in his lifetime, except $175.    While the depositions were being taken, the executors of W. P. Ryman, deceased, came in and intervened and thereafter participated in all the proceedings.    The exceptions to the trustee's account were sustained as against the accountant and a surcharge of $4,494.21 was entered, and the account as amended and restated by the court was confirmed absolutely. The court at the same time found that the Ryman executors, interveners, were indebted to the trustee for the use of the life tenant in the sum of $229.35, and to the Streator heirs in the sum of $10,531.75.    From these findings two of the Streator heirs appealed, and in Streator's Est., 241 Pa. 142, the appeals were dismissed.    Later the Ryman executors paid into court the amounts above stated, which had been found due the Streator estate from the Ryman estate, with interest.    The first and final account of the deceased trustee was duly audited in 1915, and at the said audit the counsel for the Streator heirs stated that as the fund arose from two separate sources, a real estate fund and a personal property fund, there should be separate distributions of the two funds,

because the real estate fund was all in court.     The audit was closed and in making distribution the request was followed.     All the Streator heirs, including J. S. Pettebone, guardian of Milton B. Streator, respondent herein, by the hand of their counsel, receipted upon the docket for their respective distributive shares.     The fund so distributed was paid into court by the Ryman executors, and the trustee's estate is unable to pay the balance of the amount found due from the trustee upon settlement of his account.     The Streator heirs and the surety of the trustee hope to collect this balance of $4,844.50, with interest from June 19, 1911, through the agreement quoted above in full.     There is at present no trustee in the Streator estate, for the trust has terminated, and there is no administrator d. b. n. c. t. a., and we think none is required.

In the usual course of administration claims against a decedent are heard at the audit held in his estate, but wherever heard, the claim can finally be allowed only on distribution in the debtor's estate.     This course was departed from when the executors of the Ryman estate came in and intervened in the hearing of exceptions to the final account of the trustee in the Streator estate. The said account was regularly advertised and hence every person who was interested in the fund had notice. It being a final account any omission of assets was the proper subject of exceptions.     It was maintained by exceptants that Ryman had illegally absorbed assets of the trust estate, and Ryman's executors came in and asked to be made parties: Watts' Est., 158 Pa. 1.     The court, therefore, had jurisdiction of the subject-matter, the trustee's administrator, the Streator heirs and the Ryman executors, who were all the parties in interest. In disposing of the exceptions we found that Ryman had taken from the trustee the sum of $229.35 belonging to the life tenant and the principal sum of $10,531.75 belonging to the Streator heirs.     These sums, with interest, the executors paid into court, and thus pro tanto re-

duced the balance found due from the trustee's admin-
istrator.    The court sustained the exceptions to the trus-
tee's account and surcharged the trustee with assets not
accounted for; but refused to find that Ryman had re-
ceived these assets except to the extent stated.    The fail-
ure of the court to find that Ryman had appropriated
other assets of the Streator estate which the trustee had
received, was expressly assigned as error in the Streator
Est., 241 Pa. 142.

It was sought to charge Ryman with every item of the
trust estate, except $175, and each item was the subject
of a separate finding.    The agreement which is now
under consideration was not offered in evidence in the
Streator estate but the substance of it appears in the tes-
timony.    The parties knew of it and might have offered
it.    In the Streator estate the final account has been
confirmed and the audit closed and all the heirs have ac-
cepted partial distribution of the money paid in by the
Ryman executors.    The account could now be reopened
only by petition for review and no cause has been shown
which would warrant the court in allowing it: Hawkins'
O. C. Practice, paragraph 190.    If the bonds deposited
by the executor thereby became the property of the trus-
tee, and we do not think they did, then the Streator heirs
should have excepted to their omission from the trustee's
final account, which they did not do, although they knew
of the agreement.    The Streator heirs have had their
day in court and all their rights under the agreement
have been adjudicated and they have accepted the fruits
of that adjudication.    What the rights of the trustee's
surety may be at the Ryman audit we are not now called
upon to determine.

The court awarded the relief prayed for.    Jacob S.
Pettebone, guardian of Milton B. Streator, a minor, ap-
pealed.

*Error assigned,* among others, was the decree of the
court.

*J. E. Jenkins,* for appellant.

*Wm. C. Price,* for appellee.

PER CURIAM, July 1, 1916:

The bonds which the court below ordered the Miners' Bank of Wilkes-Barre to turn over to the executor of W. P. Ryman, deceased, were deposited with it by him to secure the payment of a claim made by the Streator estate against the Ryman estate. The amount found by the court below to be due to the former by the latter has been paid by Ryman's executor, and accepted by the Streator heirs, this appellant having, through his attorney, receipted for the share of his ward. The bonds deposited with the bank for a special purpose never belonged to the Streator estate, and those interested in it do not now have the shadow of a claim upon them as security for what may be due from the estate of S. B. Sturdevant, the deceased insolvent trustee. The bank is not complaining of the decree, and, as it does not lie in the mouth of the appellant to complain of it, his appeal is dismissed at his costs.